UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

RICHARD RYAN K.,                          )      No. EDCV 19-506 AGR
                                          )
                 Plaintiff,               )
                                          )
          v.                              )      MEMORANDUM OPINION AND ORDER
                                          )
ANDREW SAUL,                              )
Commissioner of Social Security,          )
                                          )
                 Defendant.               )
_____)

Plaintiff[1] filed this action on March 20, 2019.  The parties filed a Joint Stipulation that addressed the disputed issue.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court affirms the decision of the Commissioner.

_____

[1]  Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 11, 12.)

# I.

## PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 18, 2015, and alleged an onset date of March 30, 2014. Administrative Record ("AR") 15. The applications were denied initially and on reconsideration. AR 15, 130-31, 160-61. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On December 14, 2017, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified. AR 39-99. On January 31, 2018, the ALJ issued a decision denying benefits. AR 12-32. On February 2, 2019, the Appeals Council denied review. AR 1-5. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

III.

## DISCUSSION

### A.    Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

### B.    The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2019.  AR 17.  Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of (1) a mental impairment diagnosed to include a somatoform functional disorder including conversion disorder/ pseudoseizures/psychogenic movement or tic disorder, depression, and anxiety; and (2) obesity, in combination with degenerative disc disease of the cervical, thoracic, and lumbar spine and type II diabetes mellitus.  AR 18.

The ALJ found that Plaintiff had the residual functional capacity to perform light work except that he could occasionally climb ramp and stairs; occasionally balance, stoop, kneel and crouch; and frequently reach, handle and finger.  He could never crawl or climb ladders, ropes or scaffolds.  He could never work in the presence of hazardous machinery or at unprotected heights, or operate a motor vehicle as part of job duties.

---

[3]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

1   Plaintiff is limited to simple, routine tasks; simple work; and simple work-related

2   decisions.  He is capable of occasional interaction with supervisors and coworkers, and

3   should never work with the general public.  AR 21.

4          The ALJ found that Plaintiff was unable to perform any past relevant work but

5   could perform jobs that exist in significant numbers in the national economy such as

6   marker (DOT 209.587-034), router (DOT 222.587-038), and routing clerk (DOT

7   222.687-022).  AR 30-32.

8          **C.      Mental Residual Functional Capacity**

9          The residual functional capacity ("RFC") assessment measures the claimant's

10   capacity to engage in basic work activities.  *Bowen v. New York*, 476 U.S. 467, 471

11   (1986).  The RFC is a determination of "'the most [the claimant] can still do despite [the

12   claimant's] limitations.'"  *Treichler v. Comm'r*, 775 F.3d 1090, 1097 (9th Cir. 2014)

13   (citation omitted).  The ALJ's RFC assessment must be supported by substantial

14   evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

15          An opinion of a treating physician is given more weight than the opinion of

16   non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When, as

17   here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not

18   reject this opinion without providing specific and legitimate reasons supported by

19   substantial evidence in the record.  This can be done by setting out a detailed and

20   thorough summary of the facts and conflicting clinical evidence, stating his interpretation

21   thereof, and making findings."  *Id.* at 632 (citations and quotation marks omitted).

22          An examining physician's opinion constitutes substantial evidence when it is

23   based on independent clinical findings.  *Id.*  "'The opinion of a nonexamining physician

24   cannot by itself constitute substantial evidence that justifies the rejection of the opinion

25   of either an examining physician or a treating physician.'"  *Ryan v. Comm'r*, 528 F.3d

26   1194, 1202 (9th Cir. 2008) (citation and emphasis omitted).  A non-examining

27   physician's opinion may serve as substantial evidence when it is supported by other

28

4

1  evidence in the record and is consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035,

2  1041 (9th Cir. 1995).

3   "When there is conflicting medical evidence, the Secretary must determine

4  credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir.

5  2002) (citation and quotation marks omitted).

6   The ALJ's mental RFC assessment limited Plaintiff to simple, routine tasks;

7  simple work; and simple work-related decisions.  The ALJ found Plaintiff capable of

8  occasional interaction with supervisors and coworkers, but not capable of working with

9  the general public.  AR 21.

10   Plaintiff makes two arguments.

11      **1.** **Dr. McWilliams and Dr. Walls**

12   Dr. McWilliams is a state agency review physician.  Plaintiff asserts that the ALJ's

13  RFC assessment, which limited Plaintiff to occasional contact with supervisors and

14  coworkers, did not take into account Dr. McWilliams' opinion that Plaintiff was limited to

15  brief supervision and coworker contact.  AR 142.  Plaintiff argues that infrequent

16  interactions can be lengthy, such that the contact is "occasional" but not "brief."

17   Dr. Walls is another state agency review physician.  Dr. Walls opined that Plaintiff

18  could accept supervision.  Plaintiff contends that the ALJ's RFC assessment, however,

19  did not account for Dr. Walls' opinion that Plaintiff was limited to superficial coworker

20  interaction.  AR 126.  Plaintiff argues that coworker contact could occur occasionally but

21  not superficially, "such as work involving occasional teamwork that forms a critical part

22  of the work function."  JS at 6.

23   The ALJ afforded "some weight" to the opinions of Dr. McWilliams and Dr. Walls.

24  He noted that, although their opinions were based on outdated mental regulations, the

25  opinions were "generally consistent with the evidence of record and established

26

27

28

[RFC]."[4]  AR 26.  The ALJ stated that his RFC assessment took into account Plaintiff's moderate limitations in interacting with others.  AR 20, 30.

In *Shaibi v. Berryhill*, 883 F.3d 1102 (9th Cir. 2018), the Ninth Circuit determined that a limitation to "occasional interactions with coworkers" sufficiently accounted for an examining physician's opinion that the claimant had moderate limitations in interacting with work peers and supervisors.  *Id.* at 1107.  The ALJ "evidently contemplated that [the claimant's] social limitations were significant enough that he was incapable of *frequent or sustained* interactions with coworkers," but not sufficiently debilitating that the claimant could *never* interact with coworkers.  *Id.* (emphasis added).  The ALJ's conclusion was consistent with moderate as opposed to mild or marked social interaction limitations.  *Id.*  The court also determined that the ALJ's limitation to occasional interaction with coworkers was not inconsistent with a medical source's opinion that the claimant was able to relate to others on a superficial work basis.  *Id.*  In this case, the ALJ could come to the same conclusion given that both medical sources opined that Plaintiff was not significantly limited in his ability to ask simple questions and request assistance, and to maintain socially appropriate behavior.  AR 126, 142.

More importantly, an ALJ's error is harmless when it is "inconsequential to the ultimate nondisability determination."  *Stout v. Comm'r,* 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Carmickle v. Comm'r*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).  The vocational expert testified that the three representative jobs "have the least amount of contact with people as is measured by the DOT."  AR 95.  For example, the ALJ determined that Plaintiff could work as a marker (DOT 209.587-034).  That occupation

---

[4]  ALJs "are not bound by findings made by State agency or other program physicians and psychologists."  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (S.S.A.) at *2.  Rather, ALJs are merely required to "explain the weight" given to state agency physicians' opinions.  *Id.*; *see also* 20 C.F.R. §§ 404.1527(e); 416.927(e).  As Plaintiff's claims were filed before March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.  Claims filed on or after March 27, 2017 are governed by 20 C.F.R. §§ 1520c and 416.920c.

1  involves marking prices and attaching price tickets to articles of merchandise.  "Talking"

2  and "hearing" are nonexistent activities or conditions for the occupation.  Worker

3  functions relating to people such as "taking instructions" are "not significant" aspects of

4  the occupation  *Id.*; *see also* DOT APPENDIX B - Explanation of Data, People, and

5  Things, 1991 WL 688701.  There is no indication that teamwork or nonsuperficial

6  coworker interaction would be a critical part of Plaintiff's duties.  *See Dean v. Berryhill*,

7  2019 U.S. Dist. LEXIS 40818, *6-*7, *13-*14 (E.D. Cal. Mar. 13, 2019) (claimant limited

8  to brief, casual interaction with coworkers for no more than 10% of workday could

9  perform marker and router jobs); *Wagner v. Berryhill*, 2018 U.S. Dist. LEXIS 138262,

10  *10 (C.D. Cal. Aug. 14, 2018) (claimant limited to occasional, brief, and superficial

11  interactions with supervisors could perform marker job); *Remer v. Berryhill*, 2018 U.S

12  Dist. LEXIS 106853, *11-*12, *15-*17 (S.D. Cal. June 26, 2018) (claimant limited to

13  occasional superficial interactions with coworkers and supervisors could perform marker

14  job).  Accordingly, any error would be harmless.

15              **2.    Dr. Neitzert**

16         On August 18, 2016, Dr. Neitzert, Plaintiff's treating psychologist, rendered an

17  opinion, in checkbox form, regarding Plaintiff's mental RFC.  AR 553-54.  Out of 25

18  categories of mental functioning necessary to perform work, Dr. Neitzert opined that

19  Plaintiff was "unable to meet to meet competitive standards" in 13 categories and had

20  "no ability to function" in the remaining 12.[5]  *Id.*  Dr. Neitzert opined Plaintiff would be

21  absent from work more than four days per month.  Dr. Neitzert based the assigned

22  limitations on Plaintiff's tics, irritability, and problems with concept formulation, time,

23  orientation, and linear thought.  AR 554.

24

25

26         [5] The areas of functioning related to, *inter alia*, memory, understanding, attention,
   punctuality, persistence, pace, social interaction, and following instructions.  AR 553-54.
27  The form set forth five categories of limitation:  (1) unlimited or very good; (2) limited but
   satisfactory; (3) seriously limited, but not precluded; (4) unable to meet competitive
28  standards; and (5) no useful ability to function.  *Id.*

1    Plaintiff contends that the ALJ provided insufficient reasons for rejecting Dr.

2    Neitzert's opinion.[6]   The ALJ gave little weight to Dr. Neitzert's opinion because it was

3    not consistent with the other substantial evidence in the record, which included normal

4    clinical findings and minimal functional deficits during the same approximate time frame

5    and throughout the claimed period of disability.   The ALJ went through the records in

6    some detail.   AR 27, 402, 419, 421, 423, 426, 430, 434, 506-07, 530, 611, 689, 705,

7    749, 752, 758, 787, 798, 810-11, 859.

8    An ALJ may discount a treating physician's opinion that is inconsistent with

9    treatment records or with the record as a whole.   *See Batson v. Comm'r*, 359 F.3d

10    1190, 1195 (9th Cir. 2004) ("[A]n ALJ may discredit treating physicians' opinions that

11    are conclusory, brief, and unsupported by the record as a whole"); *Rollins v. Massanari*,

12    261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly may reject treating physician's opinions

13    that "were so extreme as to be implausible and were not supported by any findings

14    made by any doctor"); *see also* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (the more

15    consistent an opinion is with the record as a whole, the more weight it will be given).

16    As the ALJ noted, roughly a month before Dr. Neitzert issued his opinion, Dr.

17    Khayali noted that Plaintiff's "mental status appear[ed] to be normal."   AR 789 .   And

18    three days after Dr. Neitzert issued his opinion, Dr. Evarisio noted no psychiatric

19    abnormalities on examination.   *See* AR 787.   Although Dr. Neitzert opined that Plaintiff

20    was "unable to meet competitive standards" in understanding, remembering, and

21    carrying out short and simple instructions, Dr. Evarisio explicitly noted that Plaintiff was

22    "able to follow instructions" on examination.   *Compare* AR 553-54 *to* AR 787.   As the

23    ALJ reasoned, Dr. Evarisio's and Dr. Khayali's contemporaneous notes undermine the

24    extreme limitations Dr. Neitzert assigned.

25

26    _____

27    [6]  Dr. Neitzert's opinion was contradicted by the opinions of Dr. Walls and Dr.
McWilliams.   *Compare* AR 125-26, 142-43 *to* AR 553-54.   Therefore, the ALJ was

28    required to provide specific, legitimate reasons for giving little weight to Dr. Neitzert's
opinion.

As the ALJ further noted, Dr. Neitzert's notes diverged from other treating source notes throughout the claimed disability period.  From October 2014 through December 2017, Dr. Neitzert noted in nearly every session that Plaintiff's mood was depressed, anxious, and/or irritable.  AR 448-64, 829-57.  With few exceptions, he noted Plaintiff had a hastily-groomed appearance, agitated psychomotor activity, and/or an inappropriate affect.  During this same period, however, Plaintiff's other treating physicians frequently reported that Plaintiff was negative for psychiatric symptoms (*e.g.*, depression, anxiety, and insomnia).  They noted that his mood and affect were normal and his mental status was normal on examination.  AR 379, 386, 395, 398, 402, 417, 419, 421, 424, 426, 430, 434, 467, 506, 507, 530, 573, 575, 578, 580, 584, 591, 611, 644, 706.  Notably, the records of other treating sources do not corroborate Dr. Neitzert's reports of deterioration in Plaintiff's functioning.  For example, on April 9, 2015, Plaintiff reported to Dr. Neitzert that he was "bit[ing] people's heads off" and experiencing a frightening level of aggression.  AR 837.  On April 22, Plaintiff reported to Dr. Neitzert that he was "edgy" and swinging at things he saw in the corner of his eye.  AR 836.  On May 7, Dr. Neitzert noted that Plaintiff was agitated and very depressed and, on May 27, he noted that Plaintiff was depressed, very agitated, and very irritable, with pressured speech.  AR 835.  On May 26, however, Dr. Mathur noted that Plaintiff was negative for psychiatric symptoms.  AR 424.  Similarly, on April 8, 2017, Dr. Neitzert reported that Plaintiff was depressed, anxious, very irritable, agitated, and had suicidal ideation.  AR 849.  On April 21, he reported that Plaintiff displayed poor memory, bizarre dress, disorientation as to time, and "broken stream of consciousness" speech.  AR 851.  On April 13, however, Dr. Wayment noted that Plaintiff was oriented to time, place, person, and situation; had appropriate mood and affect, normal insight, and normal judgment; and was normal overall with respect to psychiatric findings.  AR 748.  On April 28, Dr. Nallamothu, a psychiatrist, reported on intake that Plaintiff had a depressed and anxious mood, but was well-groomed and calm, had intact memory and judgment, was not disoriented, and was not suicidal.  AR

868.  With the exception of a depressed mood in August 2017, Dr. Nallamothu reported that Plaintiff's mental status was normal in all aspects from May 2017 onward.  *See* AR 858-68.

Plaintiff argues that his non-mental health treating sources had no reason to thoroughly assess his mental status because he sought their treatment for physical impairments rather than mental ones.  Plaintiff ignores the fact that Dr. Neitzert opined that Plaintiff had severe to extreme limitations in myriad areas of mental functioning.  *See* AR 553-54.  As discussed, Dr. Neitzert consistently reported that Plaintiff had abnormal moods, affect, and psychomotor activity, among other abnormalities.  The ALJ could reasonably conclude that Plaintiff would display at least some degree of psychiatric abnormality with other treating sources, whether or not he specifically sought mental health treatment from them.  Plaintiff asserts that the pertinent regulations require the Commissioner to consider a physician's specialty when determining the weight to be given the physician's opinion.  20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii)).  As Dr. Neitzert specializes in mental health treatment, Plaintiff argues, the non-mental health treating sources' records should not detract from the weight to be given Dr. Neitzert's opinion.  The physician's speciality, however, is one of several factors – including consistency with the overall record – that the Commissioner must consider.  *See* 20 C.F.R. §§ 404.1527(c)(1)-(5), 416.927(c)(1)-(5).  No single factor is dispositive.

Finally, Plaintiff contends that Dr. Neitzert based his opinion on Plaintiff's psychogenic movement disorders rather than his mood disorders.  Plaintiff argues that because Dr. Nallamothu, his psychiatrist, did not "assume or treat" Plaintiff's psychogenic movement disorders (JS 22), his records do not constitute substantial evidence for discounting Dr. Neitzert's opinion, notwithstanding Dr. Nallamothu's psychiatry specialty.  Plaintiff is mistaken.  The record reflects that his psychogenic movement disorders were his primary reason for seeing Dr. Nallamothu.  *See* AR 749 (Dr. Wayment's April 13, 2017 note stating Plaintiff was "getting ready for treatment . . .

with psych for pseudoseizures and will get eval to make sure if it is psych or if it is real seizure like activity"), 867 (Dr. Nallamothu's April 28, 2017 note stating Plaintiff was seeking treatment for "conversion disorder"); *see also* AR 861, 863, 866, 867 (Dr. Nallamothu's notes discussing Plaintiff's movement disorders).  Dr. Nallamothu's notes are highly relevant to the interplay between Plaintiff's movement disorders and mental functioning.

## IV.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.


DATED: November 4, 2020

_____
ALICIA G. ROSENBERG
United States Magistrate Judge